1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11   NICHOLAS DELMARK,

12                                    PETITIONER,
           vs.

13

14   TIM PEREZ, Warden, California
     Institution for Men, Chino,

15   California,

16                                    RESPONDENT.

17

CASE NO. 14cv83-GPC (BGS)

**REPORT AND RECOMMENDATION: DENYING PETITION FOR WRIT OF HABEAS CORPUS**

18

19                          **I.  INTRODUCTION**

20          Petitioner Nicholas Delmark ("Delmark"), a state prisoner proceeding pro se,

21   filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C.

22   § 2254, challenging his convictions in San Diego County Superior Court case

23   number SCD167420.  (Doc. No. 1.)  Respondent contends the Petition is time-

24   barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

25   and therefore should be dismissed with prejudice.  (Doc. No. 6. at 1.)  Based on the

26   documents and evidence presented, and for the reasons set forth below, the Court

27   recommends that the Petition be **DENIED** and that this action be **DISMISSED** with

28   prejudice.

## II. FACTUAL BACKGROUND[1]

On the night of May 13, 2002, 19-year-old Ashley T. drove to a parking lot in Mission Beach to meet some friends. (Lodgment 6 at 2.) She noticed a group of people waving at her, so she stopped her car to see if they needed help. (*Id*.) A man, later identified as Delmark, approached Ashley and asked if she wanted to earn $60 by participating in a survey. (*Id*.) Ashley agreed to take the survey. (*Id*.) Although Ashley was reluctant to get into Delmark's car, she did so after Delmark convinced her he was harmless. (*Id*.)

Delmark asked Ashley a series of questions about her sexual experiences. (*Id*.) Ashley answered some of the questions. (*Id*. at 3) Delmark took her car keys from her and suggested they drive to a different location. (*Id*.) He drove for about 10 minutes, parked the car on the side of the road and resumed asking Ashley questions about sex. (*Id*.)

When Delmark began touching Ashley's chest and thighs, she protested. (*Id*.) He got on top of her, made her seat recline, unzipped his pants, pulled down her shorts and underwear and pulled her legs apart. (*Id*.) Ashley screamed, telling Delmark to get off of her. (*Id*.) Delmark punched Ashley in the mouth, causing it to bleed. (*Id*.) Ashley used Delmark's handkerchief to wipe the blood from her mouth. (*Id*.) Delmark digitally penetrated Ashley's vagina and raped her. (*Id*.) He then read poetry to her from a book he had in his car. (*Id*.) At Ashley's request, Delmark took her back to her car. (*Id*.) Before driving away, Ashley recorded Delmark's license plate number. (*Id*.)

Ashley, who was crying, shivering and seemed to be in shock, told her friend Danielle Stiffler what had happened. (*Id*.) Stiffler took Ashley to the hospital, where Ashley reported the sexual assault. (*Id*.) A physical examination showed Ashley had a swollen lip and other injuries consistent with her version of nonconsensual sex. (*Id*.) Vaginal swabs that were later tested showed the presence

---

[1] The facts are taken directly from the California Court of Appeal's decision.

of Delmark's semen.  (*Id*.)

Police officers arrested Delmark.  (*Id*.)  In the trunk of his car, the officers found a collection of poetry and a survey containing questions about sexual habits. (*Id*.)  The officers also found a handkerchief in Delmark's pocket that was later analyzed and found to contain Ashley's blood.  (*Id*.)  Delmark had abrasions and redness on his hand and chest.  (*Id*.)

### III.  PROCEDURAL BACKGROUND

On November 12, 2002, a jury convicted Delmark of the following counts: "(1) forcible rape (Penal Code § 261(a)(2)); (2) rape by foreign object (Penal Code § 289(a)); (3) sexual battery by restraint (Penal Code § 243.4(a)); (4) assault with intent to commit a felony (Penal Code § 220); and (5) false imprisonment by violence, menace, fraud or deceit (Penal Code §§ 236, 237(a))."  (Lodgment 2; Lodgment 6.)

On January 29, 2003, in a bifurcated court proceeding, the trial court found Delmark "had four prison priors (Penal Code § 667.5(b)), three serious felony priors (Penal Code § 667(a)(1)), and five 'strike' priors (Penal Code § 667(b)-(i))."  (*Id.*) The trial court also found Delmark "was previously convicted of rape, which constituted a strike (Penal Code § 667.61(a), (c) & (d)) and qualified him as a habitual sex offender (Penal Code § 667.71(a))."  (*Id.*)  The trial court sentenced Delmark to prison for 90 years to life.  (*Id.*)

On July 18, 2003, Delmark appealed his conviction contending:  (1) "the court abused its discretion by admitting evidence of his prior sexual misconduct to prove predisposition to commit the sex crimes;" (2) "the court improperly found his prior convictions constituted a strike under section 667.61, and qualified him as a habitual sex offender under section 667.71;" and (3) "his presentence credits were improperly calculated."  (Lodgment 3; Lodgment 6.)  On April 23, 2004, the Fourth District California Court of Appeal, Division One concluded Delmark was entitled

to an additional day of presentence credits, but affirmed the trial court's judgment in all other respects.  (Lodgment 6 at 18-19.)  The Court of Appeal issued a remittur on June 23, 2004.  (Lodgment 7.)

Delmark then waited nearly nine years—until March 5, 2013—before he filed his habeas petition with the San Diego County Superior Court.  (Lodgment 8.)  Delmark filed the petition based on four grounds:  (1) he was "illegally sentenced. . . under the laws existing at the time"; (2) "actual innocence"/ "cumulative prejudicial evidence;" (3) "ineffective assistance of counsel;" and (4) "ineffective assistance of appellate counsel."  (*Id*.)  The trial court denied each of Delmark's four claims and also found Delmark's petition untimely due to his substantial delay in filing and failure to show good cause for the delay. (Lodgment 9.)  On June 10, 2013, Delmark filed his habeas petition in the Fourth District California Court of Appeal, Division One.  (Lodgment 10.)  On July 10, 2013, the Court of Appeal denied the petition.  (Lodgment 11.)  On August 29, 2013, Delmark filed his habeas petition in the California Supreme Court.  (Lodgment 12.)  The California Supreme Court denied the petition on November 13, 2013.  (Lodgment 13.)

On January 10, 2014, Delmark filed the instant federal habeas Petition based on the same grounds previously raised in his state habeas petitions.  (Doc. No. 1.)  On February 19, 2014, Respondent moved to dismiss the Petition on the basis that it is untimely under the AEDPA.  (Doc. No. 6.)  On April 25, 2014, Delmark filed a response in opposition to the motion to dismiss.  (Doc. No. 12.)

## IV.  DISCUSSION

### The Petition Is Barred By The Statute Of Limitations Under AEDPA

### 1.  The AEDPA's One-Year Statute of Limitations

The AEDPA provides a one-year statute of limitations for filing a habeas corpus petition in federal court.  *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005) (citing 28 U.S.C. § 2244(d)(1)).  The enactment of the AEDPA amended 28 U.S.C.

§ 2244 by adding the following section:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## 2. Commencement of the One-Year Statute of Limitations

Under the AEDPA, Delmark had one year from the date his conviction became final to file a petition for writ of habeas corpus in federal court. *Calderon v. U.S. District Court*, 128 F.3d 1283, 1286-87 (9th Cir. 1997), *as amended on denial of rhg. and rhg. en banc, cert. denied*, 522 U.S. 1099 (1998), *overruled on other grounds by Calderon v. U.S. District Court*, 163 F.3d 530 (9th Cir. 1998), *cert. denied*, 523 U.S. 1063 (1999). A habeas petitioner's conviction becomes final on the date when the time for seeking discretionary review in a state's highest court expires. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012). In California, a judgment from the Court of Appeal becomes final 40 days after the issuance of the opinion. *Smith v. Duncan*, 297 F.3d 809, 813 (9th Cir. 2002), *overruled on other grounds by U.S. v. Davis*, 508 F. App'x 606 (9th Cir. 2013).

///

Delmark challenged his conviction on direct appeal to the Fourth District California Court of Appeal, Division One.  The court affirmed Delmark's conviction on April 23, 2003.  (Lodgment 6.)  Delmark did not pursue discretionary review in the California Supreme Court.  Accordingly, after 40 days, on June 2, 2003, Delmark's conviction became final.  Therefore, the statute of limitations began to run on June 3, 2003.  28 U.S.C. § 2244(d)(1)*; See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) (finding that the one-year statute of limitations begins to run the day after the conviction becomes final).  The statute of limitations, however, may be subject to both statutory and equitable tolling.  *Calderon*, 128 F.3d at 1288.  Absent statutory or equitable tolling, Delmark only had until June 3, 2004 to timely file his federal habeas petition.  Delmark, however, filed his Petition on January 10, 2014, which is more than nine years after the June 3, 2004 deadline. (Doc. No. 1.)  Thus, the Court will need to determine whether Delmark qualifies for any tolling of the limitations period.

### 3.  Statutory Tolling

The AEDPA applies to all federal habeas corpus petitions filed after the Act's enactment in 1996.  *See Patterson v. Stewart*, 215 F.3d 1243, 1246 (9th Cir. 2001). The AEDPA tolls the one-year statute of limitations period for the amount of time a "properly filed application for State post-conviction or other collateral review" is pending in state court.  28 U.S.C. § 2244(d)(2).  The one-year limitations period cannot be tolled if the initial state habeas petition is filed after the limitations period for filing the federal habeas petition has expired.  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).  A state prisoner who unreasonably delays in filing a state habeas petition is not entitled to statutory tolling because the petition is not considered "pending" or "properly filed" within the meaning of § 2244(d)(2). *Nedds v. Calderon*, 678 F.3d 777, 780 (9th Cir. 2012) (quoting *Carey v. Saffold*, 536 U.S. 214 (2002); *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

Delmark's conviction became final on June 2, 2003.  Accordingly, absent statutory tolling, the deadline to file his federal habeas petition was June 3, 2004. Delmark waited nearly nine years before filing his habeas petition with the San Diego Superior Court on March 5, 2013.  (Lodgment 8.)  Nine years is an unreasonable delay for tolling purposes.  Because the AEDPA one-year statute of limitations expired nearly nine years before Delmark filed his habeas petition with the California Superior Court, the state petition was not "properly filed" within the meaning of § 2244(d)(2) and does not qualify Delmark for any statutory tolling. Therefore, the federal Petition is time-barred unless Delmark is entitled to equitable tolling.

### 4.  Equitable Tolling

The AEDPA's one-year statute of limitations may be subject to equitable tolling in appropriate cases.  *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010).  To be entitled to equitable tolling, a habeas petitioner has the burden to establish two elements:  (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way."  *Pace*, 544 U.S. at 418.

Delmark is not relying on either of the above grounds to request a period of equitable tolling.  Rather, Delmark claims he is actually innocent, and therefore, the actual innocence exception to AEDPA's statute of limitations should allow Delmark to have his claims reviewed.  (Pet. at 13.) The Court must consider whether Demark presents sufficient new evidence of actual innocence to excuse his untimely filing and permit review of his constitutional claims on the merits.

Delmark's actual innocence claim is based solely on Janice Littrell's 2013 declaration.  (Doc. No. 1. at 5, 54.)  On January 21, 2013, Janice Littrell swore in a declaration:

"Petitioner Nicholas Delmark asked me to verify the statements of Ashley Tate regarding the location and distance surrounding the Belmont Park area in

1    Mission Beach." (Lodgment 8 at Ex. A.)   Littrell states she visited the location of

2    the crime and observed the following:  "the surrounding area is residential.  Had

3    Ms. Tate truly screamed for help as she claimed she did, someone would have heard

4    it." (Lodgment 8 at Exhibit A.)  The declaration, however, does not explain who

5    Ms. Littrell is, her relationship to Delmark, or the date she drove to the location.

6    (*See id*.)

7                              **1.  Legal Standard**

8          A habeas petitioner may be entitled to an equitable exception to the AEDPA's

9    statute of limitations period upon credible showing of "actual innocence" under

10   *Schlup v. Delo*, 513 U.S. 298 (1995).  *See Lee v. Lampert*, 653 F.3d 929, 931 (9th

11   Cir. 2011).  "[A] petitioner who makes such a showing may pass through the *Schlup*

12   gateway" and present otherwise time-barred claims in federal court. *Id.* at 932.  To

13   pass through the *Schlup* gateway, Delmark must produce proof of his actual

14   innocence "that is sufficient to convince a federal court that a failure to entertain his

15   claim would constitute a fundamental miscarriage of justice." *Id.* at 937 (quoting

16   *Schlup*, 513 U.S. at 299).  Delmark must also show that "it is more likely than not

17   that no reasonable juror would have convicted him in the light of the new

18   evidence." *Id*. at 938 (citing *Schlup*, 513 U.S. at 327).  This standard "permits

19   review only in the extraordinary case, but it does not require absolute certainty

20   about the petitioner's guilt or innocence." *Larsen v. Soto*, 742 F.3d 1083, 1095 (9th

21   Cir. 2013) (quoting *Schlup*, 513 U.S. at 321).

22         For Delmark's claim of actual innocence to be credible, Delmark must

23   "support his allegations of constitutional error with new reliable evidence—whether

24   it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

25   physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

26   Moreover, the evidence must be "so strong that a court cannot have confidence in

27   the outcome of the trial unless the court is also satisfied that the trial was free of

28

1  nonharmless constitutional error." *Id.* at 316.

2  ### 2. Analysis

3  Delmark's actual innocence claim cannot pass through the *Schlup* gateway

4  requirements. Delmark fails to present new reliable evidence that was not presented

5  at trial to support his claim of innocence. In support of his actual innocence claim

6  made to the state courts, Delmark submitted Jane Littrell's declaration signed on

7  January 21, 2013. (Exhibit A to Lodgment 8.) The declarant claims that the

8  location where the crime occurred is a residential area and "had Ashley T. actually

9  screamed as she claims to have done, someone would have heard her." (*Id.*)

10  Both the San Diego Superior Court and California Court of Appeal addressed

11  Delmark's actual innocence claim in his habeas petitions to those courts. The state

12  courts determined that even if the declaration accurately reflects the conditions of

13  the crime scene in 2002, it does not constitute new evidence since the information

14  regarding the location of the crime was available prior to the date Delmark's

15  conviction became final. (Lodgment 9; Lodgment 11.) Moreover, this Court finds

16  that even if the declaration is assumed to be new evidence, it is not evidence

17  sufficient to convince a reasonable jury that Delmark is not guilty. Although the

18  evidence standard under the *Schlup* test does not require absolute certainty about

19  Delmark's innocence, the Littrell declaration offers no evidence that would

20  convince a reasonable jury that he did not commit forcible rape, rape by foreign

21  object and use of force, sexual battery by restraint, assault with intent commit a

22  felony or false imprisonment by violence, menace, fraud or deceit. The declaration

23  merely states that if Ashley T. had screamed like she testified, someone would have

24  heard her scream. This declarant merely offers her opinion based on pure

25  speculation but fails to offer reliable evidence supporting Delmark's actual

26  innocence claim.

27  ///

28

Accordingly, Delmark has not brought forth any new or reliable evidence for consideration, much less any evidence that would more likely than not convince a reasonable jury to find that he is not guilty.  The actual innocence threshold has not been met and is not available to otherwise revive his time-barred petition.

## V. CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court recommends that Petition be **DISMISSED** with prejudice because it is time-barred.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

IT IS HEREBY ORDERED that no later than **August 1, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties within 14 days of being served with the objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 3, 2014

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court